Dennis Stewart (State Bar No. 99152)
**GUSTAFSON GLUEK PLLC**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel: (619) 987-4250
dstewart@gustafsongluek.com

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Michael White,** *on behalf of himself and as parent and guardian of his minor children, Jane Doe and Mary Doe, and on behalf of all others similarly situated,*<br><br>Plaintiff,<br><br>vs.<br><br>**POWERSCHOOL HOLDINGS, INC.,**<br><br>Defendant. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Michael White ("Plaintiff"), by and through undersigned counsel, files this Class Action Complaint individually and as a parent and guardian of his minor children, and on behalf of a class of all similarly situated persons, against PowerSchool Holdings, Inc. ("Defendant" or "PowerSchool"). Plaintiff bases the foregoing allegations upon personal information and belief, the investigation of counsel, and states as follows:

### INTRODUCTION

1.     On or around January 7, 2025, PowerSchool confirmed that it experienced a cybersecurity incident that allowed cybercriminals to access personal data of students

and teachers in elementary, middle, and high school districts across the United States.[1]

2.      According to PowerSchool, the cybercriminals accessed PowerSchool's customers' clients' highly sensitive information including their names, addresses, Social Security numbers, medical information, , and other unspecified personally identifiable information (collectively, the "Private Information" or "PII").[2]

3.      The cybercriminals were able to access this Private Information by breaking into PowerSchool's internal customer support portal using a stolen credential (the "Data Breach").[3]

4.      To date, PowerSchool has declined to say how many individuals are impacted by the Data Breach.[4]

5.      PowerSchool is an education technology platform that specializes in data collection, storage, and analytics and offers its specialized services primarily to schools and school districts.

---

[1] Carly Page, *Edtech giant PowerSchool says hackers accessed personal data of students and teachers*, TECHCRUNCH (Jan. 8, 2025), https://techcrunch.com/2025/01/08/edtech-giant-powerschool-says-hackers-accessed-personal-data-of-students-and-teachers/?guccounter=1&guce_referrer=aHR0cHM6Ly93d3cuYmluZy5jb20v&guce_referrer_sig=AQAAAMXJpDe8j7n3FCh87gwhhEvJY3kNURpBzXTcgD7MB0SxrLgSGAddCWeZExWgqEYJHppUTly4zYbijdOV8HOYJAeUK7wOyqKKSJvmiQKolv3PJ-1WBmNNM_XRIcl2W3glpXUj3n_BHtUYIMJofFXZZ6MQse0R1rGFGhmA_AaEwwf.

[2] Carly Page, *PowerSchool says hackers stole students' sensitive data, including Social Security numbers, in data breach*, TECHCRUNCH (Jan. 9, 2025), https://techcrunch.com/2025/01/09/powerschool-says-hackers-stole-students-sensitive-data-including-social-security-numbers-in-data-breach/.

[3] *Id.*

[4] *Id.*

6.      When PowerSchool's customers—schools and school districts—utilize its products, PowerSchool gains access to the data of the children who attend those schools and their parents, including their Private Information.

7.      The amount of Private Information PowerSchool has access to is immense. PowerSchool's software is used by 16,000 customers to support more than 50 million students—or 75 percent of the students— in North America. More than 90 of the largest 100 districts, measured by student enrollment, in the United States have used PowerSchool's products.

8.      Although PowerSchool does not fully disclose what type of data it collects from school-age children or their parents, its public disclosures mention many kinds of data that PowerSchool "may" collect about its users, including the following:

   a.   <u>Contact Information</u>

        -   Student address

        -   Student email address

        -   Phone numbers

   b.   <u>Behavioral Information</u>

        -   Student behavior data

        -   Student conduct data

        -   Student evaluation and management data

        -   Student social-emotional learning indicators and inputs

c.  <u>Demographic Information</u>

- Parent or guardian name

- Student date of birth

- Student name

- Student Social Security number

d.  <u>Medical Information</u>

- Allergies

- Disabilities

- Immunization records

- Treatment providers

e.  <u>School Records</u>

- Academic program membership

- Enrollment data

- Extracurricular program membership

- Student assessment

- Student grades

- Student identifiers

- Transcript data

9.      This type of personal and sensitive data is highly targeted by cybercriminals

who seek to exploit this data for nefarious purposes. Indeed, Private Information,

particularly Social Security numbers, have inherent value, and are routinely marketed and

4

sold on the dark web. In the wrong hands, the personal and sensitive information that PowerSchool collects and stores may be used to cause significant harm to students and their parents, including being used to orchestrate a range of fraudulent schemes.

10.     The value of this information on the dark web is well recognized in the modern data economy, and the foreseeable risk to customers as a result of a cybercriminal event is known and recognized by technological companies that gather and store data, including PowerSchool.

11.     When customers' data is accessed by cybercriminals, the affected individuals must spend a substantial amount of time, money, and other resources to monitor their credit, financial accounts, medical records, email, and mail.

12.     Because it is foreseeable that exposure of Private Information to cybercriminals will result in harm to the affected individuals, PowerSchool has a duty to use reasonable and necessary data security practices to protect the private, sensitive, and personal information that it stores.

13.     If PowerSchool had employed reasonable and necessary data security practices, the harm to Plaintiff could have been avoided.

14.     Instead, as a direct and proximate result of PowerSchool's failure to employ reasonable and necessary data security practices, Plaintiff's, his minor children's, and Class Members' Private Information is known to cybercriminals.

15.     Plaintiff, his minor children, and Class Members, now face a substantially increased and certainly impending risk of fraud, identity theft, intrusion into medical information, misappropriation of health insurance benefits, Private Information being

shared on the dark web, and other forms of criminal activity. The risk of this harm may remain for the rest of Plaintiff's, his minor children's, and Class Members' lives.

16.     Plaintiff, his minor children, and Class Members have also suffered concrete injuries in fact including, but not limited to, lost or diminished value of Private Information, lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, loss of benefit of the bargain, lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, and actual misuse of the compromised data consisting of an increase in spam calls, texts, and emails.

17.     Because of the injuries Plaintiff, his minor children, and Class Members have already endured and continue to face, they must continue to spend money, time, and other resources to protect themselves from these crimes.

18.     Further, Plaintiff, his minor children, and Class Members face additional hardship in their ability to mitigate the harm resulting from the Data Breach because PowerSchool has failed to conduct any meaningful investigation into the Data Breach and the specific information that was accessed. Without more specific information about the Data Breach, Plaintiff's, his minor children's, and Class Members' ability to protect themselves from the harm resulting from the Data Breach is compromised.

19.     Plaintiff, on behalf of himself, his minor children, and all others similarly situated, therefore brings claims for (i) Negligence; (ii) Negligence *Per Se*; (iii) Breach of Implied Contract; (iv) Breach of Fiduciary Duty; (v) Invasion of Privacy; (vi) Declaratory Judgement; and (vii) Unjust Enrichment. Plaintiff seeks damages and injunctive relief,

including the adoption of reasonable and necessary data security practices to protect the Private Information in PowerSchool's custody and prevent future data breaches.

## PARTIES

20.     Plaintiff Michael White is a citizen of the United States residing in Durham, North Carolina.

21.     Plaintiff White's two minor children are also citizens of the United States residing with him in Durham, North Carolina.

22.     Defendant PowerSchool Holdings Inc. is a Delaware corporation with its headquarters located at 150 Parkshore Drive, Folsom, California 95630.

## JURISDICTION & VENUE

23.     This Court has subject matter jurisdiction over this case pursuant to the Class Fairness Act of 2005, 28 U.S.C. § 1332(d). The amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, there are more than 100 putative class members and minimal diversity exists because Plaintiff, his minor children, and many putative class members are citizens of a different state than one or more Defendant.

24.     This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

25.      This Court has personal jurisdiction over Defendant because it operates and maintains its principal place of business in this District. Additionally, Defendant is authorized to and regularly conducts business in this District and makes decisions regarding corporate governance and management of its business operations in this District, including decisions regarding the security of its customers' Private Information.

White Class Action Complaint

26.     Venue is proper in this District because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District and Defendant has harmed Class Members residing in this District.

## BACKGROUND

### A. Defendant Collects Personal and Sensitive Information

27.     PowerSchool is an education technology company that advertises itself as providing educational products to schools and school districts.

28.     Plaintiff, his minor children, and Class Members are current and former students and students' parents of PowerSchool's customers.

29.     In exchange for receiving educational support and/or employment services from PowerSchool, students and students' parents entrust PowerSchool with highly sensitive and private personal information.

30.     Without the required disclosure of Private Information from Plaintiff, his minor children, and Class Members, PowerSchool could not perform the services it provides.

31.     PowerSchool collects highly sensitive PII, including names, addresses, dates of birth, phone numbers, email addresses, Social Security Numbers, medical information, and a myriad of additional personal, identifying information from students and students' parents.

32.     This highly sensitive PII is held, unencrypted, in PowerSchool's computer systems.

33.     Students and students' parents reasonably expect PowerSchool to safeguard their highly sensitive PII and to keep it secure and confidential.

34.     Upon information and good faith belief, PowerSchool promised and represented to its customers and their clients that the PII collected from them as a condition of obtaining PowerSchool's educational support services would be safeguarded and kept secure and confidential and would be deleted after PowerSchool was no longer required to maintain it.

35.     Because the data PowerSchool stores is highly sensitive and personal in nature, PowerSchool is required to keep this PII private, comply with industry standards related to data security, comply with all laws protecting PII, and provide notice to affected individuals if their PII is disclosed without authorization.

36.     By obtaining, collecting, using, and benefiting from Plaintiff's, his minor children's, and Class Members' PII, PowerSchool assumed legal and equitable duties owed to them and knew or should have known that it was responsible for protecting their PII.

37.     Plaintiff, his minor children, and Class Members relied on PowerSchool to keep their PII confidential and securely maintained, which Defendant ultimately failed to do.

38.     Upon information and good faith belief, Defendant's actions and inactions directly resulted in the Data Breach and the compromise of Plaintiff's, his minor children's, and Class Members' PII.

**B. PowerSchool's Inadequate Data Security Measures Exposed Plaintiff's, his Minor Children's, and Class Members' PII**

39. On or around January 7, 2025, PowerSchool confirmed that it experienced a cybersecurity incident that allowed cybercriminals to access personal data stored on its systems.[5]

40. Specifically, PowerSchool confirmed that on or around December 19, 2025, cybercriminals stole the Private Information of students, their parents, and teachers from schools using its PowerSchool SIS platform.

41. PowerSchool has not disclosed the identity of the cybercriminals behind this Data Breach, details surrounding the cause of the Data Breach, the specific data that was stolen, or remedial measures it is undertaking to ensure the breach does not happen again.

42. PowerSchool is obligated by the FTC Act, contract, common law, and industry standards to safeguard Plaintiff's, his minor children's, and Class Members' PII and prevent it from being disclosed to unauthorized persons.

43. As a direct result of PowerSchool's failure to implement reasonable and necessary data security practices, the Data Breach occurred.

---

[5] Carly Page, *Edtech giant PowerSchool says hackers accessed personal data of students and teachers*, TECHCRUNCH (Jan. 8, 2025), https://techcrunch.com/2025/01/08/edtech-giant-powerschool-says-hackers-accessed-personal-data-of-students-and-teachers/?guccounter=1&guce_referrer=aHR0cHM6Ly93d3cuYmluZy5jb20v&guce_ref errer_sig=AQAAAMXJpDe8j7n3FCh87gwhhEvJY3kNURpBzXTcgD7MB0SxrLgSGA ddCWeZExWgqEYJHppUTly4zYbijdOV8HOYJAeUK7wOyqKKSJvmiQKolv3PJ-1WBmN-NM_XRIcl2W3glpXUj3n_BHtUYIMJofFXZZ6MQse0R1rGFGhmA_AaEwwf.

## C. The Data Breach was Preventable

44.     PowerSchool failed to implement reasonable and necessary data security practices to protect the PII it collects and manages, such as encrypting the information or deleting it when it was no longer needed.

45.     This failure to implement reasonable and necessary data security practices cannot be attributed to a lack of knowledge or guidance for protecting PII. The United States Government has provided numerous recommendations to prevent and detect cyberattacks.

46.     The FTC has many guidelines for businesses that highlight the importance of reasonable data security practices. The FTC has noted the need to factor data security into all business decision-making. According to the FTC, data security requires: (1) encrypting information stored on computer networks; (2) retaining payment card information only as long as necessary; (3) properly disposing of personal information that is no longer needed; (4) limiting administrative access to business systems; (5) segmenting networks; (6) monitoring activity on networks to uncover unapproved activity; (7) verifying that privacy and security features function properly; (8) testing for common vulnerabilities; and (9) updating and patching third-party software.[6]

47.     The FTC has interpreted Section 5 of the FTC Act to encompass failures to appropriately store and maintain personal data. The body of law created by the FTC

---

[6] *Start With Security, A Guide for Business*, FTC, https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited Jan. 12, 2025).

White Class Action Complaint

recognizes that failure to restrict access to information and failure to segregate access to information may violate the FTC Act.

48.     FTC orders that preceded PowerSchool's Data Breach further clarify the measures businesses must take to meet their data security obligations. The FTC has issued the following orders against businesses that failed to employ reasonable measures to secure sensitive data: *In the matter of Lookout Services, Inc*., No. C-4326, ¶ 7 (June 15, 2011) ("[Defendant] allowed users to bypass authentication procedures" and "failed to employ sufficient measures to detect and prevent unauthorized access to computer networks, such as employing an intrusion detection system and monitoring system logs."); *In the matter of DSW, Inc*., No. C-4157, ¶ 7 (Mar. 7, 2006) ("[Defendant] failed to employ sufficient measures to detect unauthorized access."); *In the matter of The TJX Cos., Inc*., No. C-4227 (Jul. 29, 2008) ("[R]espondent stored . . . personal information obtained to verify checks and process unreceipted returns in clear text on its in-store and corporate networks[,]" "did not require network administrators . . . to use different passwords to access different programs, computers, and networks[,]" and "failed to employ sufficient measures to detect and prevent unauthorized access to computer networks . . ."); *In the matter of Dave & Buster's Inc*., No. C-4291 (May 20, 2010) ("[Defendant] failed to monitor and filter outbound traffic from its networks to identify and block export of sensitive personal information without authorization" and "failed to use readily available security measures to limit access between instore networks . . .").

49.     In addition to FTC guidance, PowerSchool was aware of industry best practices to prevent cyberattacks. These practices include, but are not limited to, educating all employees on cybersecurity best practices; implementing strong passwords; having multi-layer security, including firewalls, anti-virus, and anti-malware software; using encryption technology; using multi-factor authentication; and limiting the number of employees who have access to sensitive data. PowerSchool failed to follow these industry best practices, including using multi-factor authentication.

50.     Other industry best practices include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

51.     Upon information and belief, PowerSchool failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

52.     These frameworks apply in any industry, and Defendant failed to comply with these accepted standards, thereby opening the door to the hackers and causing the Data Break.

53.     As an entity that collects and stores highly sensitive information, Defendant could and should have been implementing the recommended measures to prevent and detect cyberattacks.

54.     The occurrence of the Data Breach indicates that Defendant failed to adequately implement industry-accepted measures to prevent and detect cyberattacks, resulting in injury to Plaintiff, his minor children, and Class Members.

**D. PowerSchool's Data Breach Caused Plaintiff's, his Minor Children's, and Class Members' Injuries**

55.     PowerSchool's Data Breach resulted in the theft and exposure of confidential data, including Social Security numbers and other PII. Exposure of this type of data puts individuals at a significant and prolonged risk of fraud and identity theft. Personal information like that stolen from PowerSchool is valuable and has been commoditized in recent years because of its use in conducting identity theft and fraud.

56.     After a data breach like PowerSchool's, the hackers responsible for the breach increasingly seek to sell the stolen personal and sensitive records on the black market to purchasers looking to use the personally identifying information to create fake IDs, make fraudulent transactions, submit false medical claims for reimbursement, obtain loans, or commit other acts of identity theft.[7]

57.     The ramifications of PowerSchool's failure to keep Plaintiff's, his minor children's, and Class Members' PII secure are severe. Identity theft occurs when someone

---

[7] *How do hackers make money from your stolen data?,* EMISOFT (Feb. 20, 2020), https://blog.emsisoft.com/en/35541/how-do-hackers-make-money-from-your-stolen-data/.

uses another's personal and financial information such as that person's name, Social Security number, date of birth, and/or other information, without permission, to commit fraud or other crimes.

58.     According to experts, one out of four data breach notification recipients become a victim of identity fraud.

59.     Stolen PII is often trafficked on the "dark web," a heavily encrypted part of the Internet that is not accessible via traditional search engines. Law enforcement has difficulty policing the "dark web" due to this encryption, which allows users and criminals to conceal identities and online activity.

60.     Once PII is sold, it is often used to gain access to various areas of the victim's digital life, including bank accounts, social media, credit card, and tax details. This can lead to additional PII being harvested from the victim, as well as PII from family, friends and colleagues of the original victim.

61.     According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses that year, resulting in more than $3.5 billion in losses to individuals and business victims.

62.     Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good." Defendant did not rapidly report to Plaintiff, his minor children, and Class Members that their PII was stolen.

15
White Class Action Complaint

63.     Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

64.     Data breaches facilitate identity theft as hackers obtain consumers' PII and thereafter use it to siphon money from current accounts, open new accounts in the names of their victims, or sell consumers' PII to others who do the same.

65.     Victims of identity theft often suffer indirect financial costs as well, including the costs incurred due to litigation initiated by creditors and in overcoming the many obstacles they face in obtaining or retaining credit.

66.     In addition to out-of-pocket expenses that can exceed thousands of dollars for the victim of identity theft, and the emotional toll identity theft can take, some victims have to spend considerable time repairing the damage caused by the theft of their PII. Victims of identity theft will likely have to spend time correcting fraudulent information in their credit reports and continuously monitor their reports for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with creditors.

67.     Further complicating the issues faced by victims of identity theft, data thieves may wait years before attempting to use the stolen PII. To protect themselves, Plaintiff, his minor children, and Class Members will need to remain vigilant against unauthorized data use for years or even decades to come.

68.     Consumers place a high value on their PII and a greater value on their PHI, in addition to the privacy of their personal information. Research shows how much consumers value their data privacy, and the amount is considerable. Indeed, studies confirm

16

that "[a]mong U.S. subjects, protection against errors, improper access, and secondary use of personal information is worth US $30.49–44.62."[8]

69.     By virtue of the Data Breach and unauthorized release and disclosure of the PII of Plaintiff and the Class, PowerSchool deprived Plaintiff, his minor children, and Class Members of the substantial value of their personal information, to which they are entitled. As previously alleged, PowerSchool failed to provide reasonable and necessary data security, pursuant to and in compliance with industry standards and applicable law.

70.     As a direct and proximate result of PowerSchool's wrongful actions and omissions here, Plaintiff, his minor children, and Class Members have suffered, and will continue to suffer, ascertainable losses, economic damages, and other actual injury and harm, including: (i) the resulting immediate and continuing risk of future ascertainable losses, economic damages, and other actual injury and harm; (ii) the opportunity cost and value of lost time they must spend to monitor their financial accounts and other accounts—for which they are entitled to compensation; (iii) out-of-pocket expenses for securing identity theft protection and other similar necessary services; (iv) the diminution in value of their Social Security numbers and other private information, the value of which is derived from its confidentiality and privacy; and (v) emotional distress caused by the impending risk of fraud and identity theft and the loss of privacy, confidentiality, and value of their personal information.

---

[8] Il-Horn Hann et al., *The Value of Online Information Privacy* (Oct. 2002), http://www.comp.nus.edu.sg/~ipng/research/privacy.pdf.

White Class Action Complaint

## REPRESENTATIVE PLAINTIFF'S EXPERIENCE

71.     Plaintiff Michael White's minor children, identified herein as Jane Doe and Mary Doe, attend a school that utilized PowerSchool's SIS platform.

72.     In order for Plaintiff's daughters to attend school in their school district, the Durham Public Schools, Plaintiff was required to provide their Private Information to PowerSchool, including name, date of birth, contact information, Social Security number, and other sensitive information.

73.     At the time of the Data Breach—December 19, 2024—PowerSchool maintained Plaintiff's and Ms. Doe's Private Information on its system.

74.     Plaintiff takes precautions to avoid sharing his and his minor children's Private information. For example, Plaintiff keeps documents containing his and his minor children's Private Information in a secure location. Plaintiff has never knowingly transmitted unencrypted Private Information over the internet or any other unsecured source. Plaintiff would not have entrusted PowerSchool with his and his minor children's Private Information to Defendant, or even used Defendant's services, if he had known that Defendant used inadequate data security practices.

75.     On January 9, 2025, Plaintiff received an email from the Durham Public Schools on behalf of the North Carolina Department of Public Instruction stating, inter alia, that "On December 28, 2024, PowerSchool became aware of a cybersecurity incident that began on December 19, 2024, involving unauthorized access to student and teacher data. The data breach occurred when the credentials of a PowerSchool contract employee were

compromised." The email also claimed that the breach was the result of "administrative access" to a "maintenance tunnel."

76.     Based on the information that PowerSchool has provided to the public, impacted school districts had the Private Information of students and parents exposed to cybercriminals in the Data Breach, and this information included student Social Security numbers, grades, and medical information, "and other unspecified personally identifiable information belonging to students and teachers."[9]

77.     Accordingly, Plaintiff and his minor children had their Private Information exposed to cybercriminals, including school grades, Social Security numbers, medical information, and unique identifiers to associate them with PowerSchool.

78.     Plaintiff has made reasonable efforts to mitigate the injury of the Data Breach, including researching and verifying the legitimacy of the Data Breach, reviewing credit monitoring and identity theft protection services, and monitoring his financial accounts for fraudulent activity. Because the risks associated with the Data Breach—like fraud and identity theft—are ongoing, Plaintiff will continue to spend time attempting to mitigate the injury of the Data Breach.

79.     The substantial amount of time Plaintiff has spent, and will continue spending, on these efforts could have otherwise been spent doing other activities, like work or recreation. The time Plaintiff has lost cannot be recovered.

---

[9] Carly Page, *PowerSchool says hackers stole students' sensitive data, including Social Security numbers, in data breach*, TECHCRUNCH (Jan. 9, 2025), https://techcrunch.com/2025/01/09/powerschool-says-hackers-stole-students-sensitive-data-including-social-security-numbers-in-data-breach/.

White Class Action Complaint

80.     Plaintiff has suffered actual injury from having his and his minor children's Private Information compromised as a result of the Data Breach, including, but not limited to the following:

    a.   Invasion of privacy;

    b.   Theft of Private Information;

    c.   Lost or diminished value of Private Information;

    d.   Lost time and opportunity costs associated with attempting to mitigate; the consequences of the Data breach;

    e.   Loss of benefit of the bargain;

    f.   Statutory damages;

    g.   Nominal damages; abd

    h.   Continued and increased risk to Private Information

81.     Plaintiff has also suffered additional injuries, such as experiencing fear, anxiety, and stress, both for what the Data Breach means for himself and for his minor children. The emotional distress Plaintiff has experienced is compounded by the fact that Defendant has still not revealed key details about the Data Breach such as its cause and the specific data accessed.

82.     Plaintiff and his minor children have a continuing interest in ensuring that their Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

## **CLASS ALLEGATIONS**

83.     Plaintiff brings this nationwide class action on behalf of himself, his minor children, and all other similarly situated Class Members pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure.

84.     The Nationwide Class that Plaintiff seeks to represent is defined as follows: All individuals residing in the United States whose PII was compromised in Defendants' Data Breach which occurred in or about December 2024 (the "Nationwide Class").

85.     Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

86.     Plaintiff reserves the right to modify or amend the definition of the proposed class before the Court determines whether certification is appropriate.

87.     **Numerosity**. Members of the proposed Class likely number in the thousands and are thus too numerous to practicably join in a single action. Membership in the Class is ascertainable from Defendant's own records, including but not limited to the files implicated in the Data Breach.

88.    **Commonality and Predominance**. Common questions of law and fact exist as to all proposed Class Members and predominate over questions affecting only individual Class Members. These common questions include, but are not limited to:

a.    Whether Defendant engaged in wrongful conduct alleged herein;

b.    Whether Defendant failed to timely notify Plaintiff, his minor children, and the Class Members of the Data Breach;

c.    Whether Defendant's inadequate data security practices were a cause of the Data Breach;

d.    Whether Defendant negligently or recklessly breached legal duties owed to Plaintiff, his minor children, and the Class Members to exercise due care in collecting, storing, and safeguarding their PII;

e.    Whether Defendant allowed the compromise of PII obtained from the records of Defendant without the permission or consent of Plaintiff, his minor children, and the Class Members;

f.    Whether Plaintiff, his minor children, and other Class Members are at an increased risk for identity theft because of the Data Breach;

g.    Whether Plaintiff, his minor children, and the Class Members are entitled to actual, statutory, or other forms of damages, or other monetary relief; and

h.    Whether Plaintiff, his minor children, and the Class Members are entitled to equitable relief, including, but not limited to, injunctive relief and restitution.

89.    **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class. All Class Members were subject to the Data Breach and had their PII accessed by,

1  used and/or disclosed to cybercriminals. Defendant's misconduct impacted all Class

2  Members in the same manner.

3

4          90.    **Adequacy of Representation.** Plaintiff is an adequate representative of the

5  Class because his interests do not conflict with the interests of the other Class Members he

6  seeks to represent; he retained counsel competent and experienced in complex class action

7  litigation, and Plaintiff will prosecute this action vigorously. The interests of the Class will

8  be fairly and adequately protected by Plaintiff and his counsel.

9

10          91.    **Superiority.** A class action is superior to any other available means for the

11 fair and efficient adjudication of this controversy, and no unusual difficulties are likely to

12 be encountered in the management of this matter as a class action. The damages, harm, or

13 other financial detriment suffered individually by Plaintiff and the Class Members pale

14 compared to the burden and expense that would be required to litigate their claims on an

15 individual basis against Defendants, making it impracticable for Class Members to

16 individually seek redress for Defendant's wrongful conduct. Even if Class Members could

17 afford individual litigation, the court system could not. Individualized litigation would

18 create potential for inconsistent or contradictory judgments and increase the delay and

19 expense to all parties and the court system. By contrast, the class action device presents far

20 fewer management difficulties and provides the benefits of single adjudication, economies

21 of scale, and comprehensive supervision by a single court.

92.   **Injunctive and Declaratory Relief**. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant, through its uniform conduct, acted or failed and refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole. Moreover, Defendant continues to maintain inadequate security practices, retain possession of Plaintiff's and Class Members' PII, and has not been forced to change its practices or relinquish PII by nature of other civil suits or government enforcement actions, thus making injunctive relief a live issue and appropriate to the Class as a whole.

93.   Likewise, particular issues are also appropriate for certification under Fed. R. Civ. P. 23(c)(4) because the claims present particular, common issues, the resolution of which would materially advance the resolution of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.   Whether Plaintiff's, his minor children's, and Class Members' PII was accessed and/or acquired by cybercriminals because of the Data Breach;

b.   Whether Defendant owed a legal duty to Plaintiff, his minor children, and Class Members;

c.   Whether Defendant failed to take adequate and reasonable steps to safeguard Plaintiff's, his minor children's, and Class Members' PII;

d.   Whether Defendant failed to adequately monitor its data security systems;

e.   Whether Defendant failed to comply with applicable laws, regulations, and/or industry standards relating to data security amounting to negligence;

f.   Whether Defendant's security measures were reasonable in light of data security recommendations, and other measures recommended by data security experts;

g.   Whether Defendant knew or should have known it did not employ adequate and reasonable measures to keep Plaintiff's, his minor children's, and Class Members' PII secure and;

h.   Whether Defendant's failure to adhere to FTC data security obligations, industry standards, and/or measures recommended by data security experts caused the Data Breach.

## LEGAL CLAIMS
## COUNT I
### Negligence
### (On behalf of the Nationwide Class)

94.   Plaintiff restates and realleges all preceding factual allegations above as if fully set forth herein.

95.   PowerSchool owed a common law duty to Plaintiff, his minor children, and Class Members to exercise reasonable care in protecting their PII in PowerSchool's possession from being compromised, lost, stolen, accessed, and/or misused by unauthorized persons.

96.   PowerSchool owed a common law duty to Plaintiff, his minor children, and Class Members to prevent foreseeable harm. Plaintiff, his minor children, and Class Members were the foreseeable and probable victims of any of PowerSchool's substandard data security practices. As someone that collects and stores PII—a valuable target for

White Class Action Complaint

cybercriminals—PowerSchool was obligated to act with reasonable care to protect Plaintiff, his minor children, and Class Members from the foreseeable threats.

97.     As someone that holds itself out as a trusted provider of educational support services, and is in a superior position to protect against the harm suffered by Plaintiff, PowerSchool also assumed a duty to reasonably safeguard Plaintiff's, his minor children's, and Class Members' information.

98.     PowerSchool breached the duties it owed to Plaintiff, his minor children, and Class Members. Accordingly, PowerSchool was negligent.

99.     PowerSchool breached its duties through some combination of the following errors and omissions that allowed the Data Breach to happen:

    a.   Mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of Plaintiff's, his minor children's, and Class Members' information that resulted in the unauthorized access and compromise of PII;

    b.   Mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks;

    c.   Failing to design and implement information safeguards to control these risks;

    d.   Failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures;

    e.   Failing to evaluate and adjust its information security program in light of the circumstances alleged herein;

f. Failing to detect the breach at the time it began or within a reasonable time thereafter;

g. Failing to follow its own privacy policies and practices published by Plaintiff, his minor children, and Class Members; and

h. Failing to adequately train and supervise employees and third-party vendors with access or credentials to systems and databases containing sensitive PII.

100. But for PowerSchool's negligence, Plaintiff's, his minor children's, and Class Members' PII would not have been stolen by cybercriminals.

101. As a direct and proximate result of PowerSchool's negligence, Plaintiff, his minor children, and Class Members have suffered injuries, including but not limited to:

a. Theft of PII;

b. Costs associated with the detection and prevention of identity theft and unauthorized use of financial accounts;

c. Costs associated with purchasing credit monitoring and identify theft prevention services;

d. Lowered credit scores resulting from purchasing credit monitoring and identity theft protection services;

e. Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach—including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft

protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

f.   The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their PII being placed in the hands of criminals;

g.   Damages to and diminution in value of their PII entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's, his minor children's, and Class Members' data against theft and not allow access and misuse of their data by others;

h.   Continued risk of exposure to hackers and thieves of their PII, which remains in Defendant's possession and is subject to further so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's, his minor children's, and Class Members' data; Future costs in terms of time, effort, and money that will be expended as a result of the Data Breach for the remainder of the lives of Plaintiff, his minor children and Class Members;

i.   The diminished value of the services they paid for and received; and

j.   Emotional distress from the unauthorized disclosure of PII to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiff, his minor children, and Class Members.

White Class Action Complaint

102.   As a direct and proximate result of PowerSchool's negligence, Plaintiff, his minor children, and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

## COUNT II
### Negligence *Per Se*
### (On behalf of the Nationwide Class)

103.   Plaintiff restates and realleges all preceding factual allegations above as if fully set forth herein.

104.   Section 5 of the FTC Act prohibits "unfair … practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by entities such as PowerSchool for failing to use reasonable measures to protect PII. Various FTC publications and orders also form the basis for PowerSchool's duty.

105.   PowerSchool violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with industry standards. PowerSchool's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of a data breach involving PII of its customers.

106.   Plaintiff, his minor children, and Class Members are consumers within the class of persons Section 5 of the FTC Act was intended to protect.

107.   PowerSchool's violation of Section 5 of the FTC Act constitutes negligence *per se*.

108.   The harm that has occurred as a result of PowerSchool's conduct is the type of harm that the FTC Act and Part 2 were intended to protect.

109.    As a direct and proximate result of PowerSchool's negligence, Plaintiff, his minor children, and Class Members have been injured as described herein, and is entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

### COUNT III
### Breach of Implied Contract
### (On behalf of the Nationwide Class)

110.    Plaintiff restates and realleges all preceding factual allegations above as if fully set forth herein.

111.    As part of its provision of educational support services, PowerSchool solicited Plaintiff's, his minor children's, and Class Members' PII. Plaintiff, his minor children, and Class Members accepted PowerSchool's offer.

112.    Upon providing their PII to PowerSchool, Plaintiff, his minor children, and Class Members entered into implied contracts with PowerSchool, whereby PowerSchool agreed to take reasonable and appropriate steps to safeguard their PII, comply with statutory and common law duties to protect their PII, and timely notify them in the event of a data breach.

113.    When entering into these implied contacts with PowerSchool, Plaintiff, his minor children, and Class Members reasonably believed that PowerSchool had the proper practices in place to comply with its duties to safeguard Plaintiff's, his minor children's, and Class Members' PII. They also reasonably believed that PowerSchool would timely notify them in the event of a data breach.

114.    Plaintiff, his minor children, and Class Members would not have provided their PII to PowerSchool if they had known that PowerSchool would fail to safeguard their PII and not provide timely notice of a data breach.

115.    PowerSchool breached its implied contracts with Plaintiff, his minor children, and Class Members by failing to safeguard their PII and not providing timely notice of the Data Breach.

116.    As a direct and proximate result of PowerSchool's breach of contract, Plaintiff, his minor children, and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

117.    Plaintiff, his minor children, and Class Members are also entitled to injunctive relief requiring PowerSchool to employ adequate security protocols consistent with industry standards to protect Plaintiff's, his minor children's, and Class Members' PII.

**COUNT IV**
**Breach of Fiduciary Duty**
**(On behalf of Nationwide Class)**

118.    Plaintiff restates and realleges all preceding factual allegations above as if fully set forth herein.

119.    When PowerSchool assumed its duty to safeguard Plaintiff's, his minor children's, and Class Members' PII, PowerSchool became a fiduciary. As such, PowerSchool has a fiduciary duty to act for the benefit of Plaintiff, his minor children, and Class Members upon matters within the scope of PowerSchool's relationship with them.

120.    Plaintiff, his minor children, and Class Members would not have entrusted PowerSchool with the important task of safeguarding their PII if they had known that PowerSchool lacked adequate data security practices.

121.    PowerSchool breached its fiduciary duties to Plaintiff, his minor children, and Class Members by failing to safeguard their PII.

122.    PowerSchool further breached its fiduciary duties to Plaintiff, his minor children, and Class Members by failing to diligently discover, investigate, and give timely notice of the Data breach.

123.    As a direct and proximate result of PowerSchool's breach of its fiduciary duties, Plaintiff, his minor children, and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

**COUNT V**
**Invasion of Privacy**
**(On behalf of Nationwide Class)**

124.    Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

125.    Plaintiff and Class Members had a legitimate expectation of privacy with respect to their PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

126.    PowerSchool owed a duty to its customers, including Plaintiff, his minor children, and Class Members, to keep their PII confidential.

127.  The unauthorized release of PII, especially the breadth of information available here, is highly offensive to a reasonable person.

128.  The intrusion was into a place or thing, which was private and is entitled to be private. PowerSchool stored and managed Plaintiff's, his minor children's, and Class Members' PII as part of its educational support services. Plaintiff and Class Members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

129.  The Data Breach constitutes an intentional interference with Plaintiff's, his minor children's, and Class Members' interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

130.  PowerSchool acted with a knowing state of mind when it permitted the Data Breach because it knew its data security practices were inadequate and knew that it had duties to secure the trove of PII it maintains.

131.  PowerSchool had notice, and knew, or had constructive knowledge, that its inadequate cybersecurity practices would cause injury to Plaintiff, his minor children, and Class Members.

132.  As a proximate result of PowerSchool's acts and omissions, Plaintiff's, his minor children's, and Class Members' PII was disclosed to and used by third parties without authorization, causing Plaintiff, his minor children, and Class Members to suffer damages.

133.    Unless and until enjoined and restrained by order of this Court, PowerSchool's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that the PII maintained by PowerSchool can be viewed, distributed, and used by unauthorized persons.

134.    Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for money damages will not end the invasion of privacy for Plaintiff, his minor children, and the Class.

## COUNT VI
### Declaratory Judgment
### (On behalf of Nationwide Class)

135.    Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

136.    Under the Declaratory Judgment Act, 28 U.S.C. §§2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as those alleged herein, which are tortious and which violate the terms of the federal and state statutes described above.

137.    An actual controversy has arisen in the wake of the Data Breach regarding PowerSchool's common law and other duties to act reasonably with respect to safeguarding the data of Plaintiff and the Class. Plaintiff alleges PowerSchool's actions in this respect were inadequate and unreasonable and, upon information and belief, remain inadequate and unreasonable. Additionally, Plaintiff, his minor children, and Class Members continue

to suffer injury due to the continued and ongoing threat of additional fraud against them or on their accounts.

138.   Pursuant  to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.  PowerSchool owed, and continues to owe a legal duty to secure the PII with which it is entrusted, and to notify impacted individuals of the Data Breach under the common law;

b.  PowerSchool breached, and continues to breach, its legal duty by failing to employ reasonable measures to secure its customers' personal and financial information; and

c.  PowerSchool's breach of its legal duty continues to cause harm to Plaintiff, his minor children, and Class Members.

139.   The Court should also issue corresponding injunctive relief requiring PowerSchool to employ adequate security protocols consistent with industry standards to protect Plaintiff's, his minor children's, and Class Members' data and PII.

140.   If an injunction is not issued, Plaintiff, his minor children, and Class Members will suffer irreparable injury and lack an adequate legal remedy in the event of another breach of PowerSchool's data systems. If another breach of PowerSchool's data systems occurs, Plaintiff, his minor children, and Class Members will not have an adequate remedy at law because many of the resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages, while warranted to compensate Plaintiff, his minor children, and Class

35

Members for their out-of-pocket and other damages that are legally quantifiable and provable do not cover the full extent of injuries suffered by Plaintiff, his minor children, and Class Members, which include monetary damages that are not legally quantifiable or provable.

141.    The hardship to Plaintiff, his minor children, and Class Members if an injunction does not issue exceeds the hardship to PowerSchool if an injunction is issued.

142.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach, thus eliminating the injuries that would result to Plaintiff, the Class, and the public at large.

## COUNT VII
### Unjust Enrichment
### (On behalf of Nationwide Class)

143.    Plaintiff restates and realleges all preceding factual allegations above as if fully set forth herein and pleads the following count in the alternative.

144.    Upon information and belief, PowerSchool paid for its data security measures from funds that included payments made by or on the behalf of Plaintiff, his minor children, and Class Members.

145.    A portion of these payment—an amount known to PowerSchool—was to be used to sufficiently safeguard Plaintiff's PII.

146.    Plaintiff, his minor children, and Class Members conferred a monetary benefit on PowerSchool, and in exchange, PowerSchool should have employed sufficient safeguards to protect their PII.

147. PowerSchool knew that Plaintiff, his minor children, and Class Members conferred a benefit which PowerSchool accepted. PowerSchool profited from its transactions with Plaintiff, his minor children, and Class Members and used their PII for business purposes.

148. Notably, PowerSchool enriched itself by saving the costs it should have spent on data security measures to safeguard Plaintiff's, his minor children's, and Class Members' PII. Instead of using payments made by or on the behalf of Plaintiff, his minor children, and Class Members to employ sufficient data security measures, PowerSchool decided to increase its own profits by using cheaper, ineffective data security measures.

149. By failing to secure Plaintiff's, his minor children's, and Class Members' PII, PowerSchool failed to provide full compensation for the benefit that Plaintiff, his minor children, and Class Members' conferred upon Defendant.

150. PowerSchool failed to disclose the inadequate data security practices previously alleged, and therefore acquired Plaintiff's, his minor children's, and Class Members' PII through inequitable means.

151. If Plaintiff, his minor children, and Class Members knew that PowerSchool had not reasonably secured their PII, they would not have agreed to provide their PII to PowerSchool.

152. Pursuant to the principles of equity and good conscience, PowerSchool should not be allowed to retain the money belonging to Plaintiff, his minor children, and Class Members due to its failure to employ sufficient data security measures.

153.   Plaintiff, his minor children, and Class Members have no adequate remedy at law.

154.   As a direct and proximate result of PowerSchool's conduct, Plaintiff, his minor children and Class Members have suffered injuries.

155.   PowerSchool should be compelled to disgorge into a common fund or collective trust, for the benefit of Plaintiff, his minor children, and Class Members, proceeds that it unjustly received from them. In the alternative, PowerSchool should be compelled to refund the amount that Plaintiff, his minor children, and Class Members overpaid for PowerSchool's services.

## **PRAYER OF RELIEF**

156.   Wherefore, Plaintiff, on behalf of himself, his minor children, and other Class Members, request this Court to award relief as follows:

a.   An order certifying the class and designating Plaintiff as the Class Representative and his counsel as Class Counsel;

b.   An award to Plaintiff and proposed Class Members of damages with pre-judgment and post-judgment interest;

c.   A declaratory judgment in favor of Plaintiff and the Class;

d.   Declaratory, injunctive, and equitable relief to Plaintiff and the Class;

e.   An award of attorneys' fees, costs, and litigation expenses, as allowed by law; and

f.   An award of such other and further relief as the Court may deem just and proper, necessary, or appropriate.

White Class Action Complaint

## JURY TRIAL DEMANDED

1  157.   Plaintiff hereby demands a jury trial for all the claims so triable.

Dated: January 15, 2024          /s/Dennis Stewart
Dennis Stewart (CA St Bar No. 99152)
**GUSTAFSON GLUEK PLLC**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel: (619) 987-4250
dstewart@gustafsongluek.com

Daniel E. Gustafson*
David A. Goodwin*
Gabrielle M. Kolb*
**GUSTAFSON GLUEK PLLC**
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
dgoodwin@gustafsongluek.com
gkolb@gustafsongluek.com

Jonathan R. Marx-NC Bar # 35428*
**CHALMERS ADAMS BACKER &
KAUFMANN, PLLC**
204 N. Person St.
Raleigh, NC 27601
Tel: (919) 701-0125
jmarx@chalmersadams.com

Chuck Gabriel- NC Bar # 54684*
**CHALMERS ADAMS BACKER &
KAUFMANN, PLLC**
13200 Strickland Rd, Ste 114-177
Raleigh, North Carolina 27613
Tel: (770) 364-2789
Office: (919) 803-2635
Fax: (678) 735-5905
CDGabriel@chalmersadams.com

White Class Action Complaint

*Attorneys for Plaintiff*
*Pro Hac Vice Pending*